**Jessie C. SHACKS, Petitioner–Appellant,**

v.

**Arthur TESSMER, Respondent–Appellee.**

**No. 00–1062.**

United States Court of Appeals, Sixth Circuit.

May 8, 2001.

Before JONES, SILER, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Jessie C. Shacks appeals the district court's denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. A Michigan jury convicted Shacks of second-degree murder and felony-firearm possession. The state trial court subsequently sentenced Shacks to a term of 40 to 60 years of imprisonment for the murder conviction and to a consecutive term of two years for the felony-firearm conviction. In this appeal, Wilson sets forth nine assignments of error. For the reasons set forth below, we AFFIRM the district court's denial of Shacks's petition for habeas corpus relief.

## I. BACKGROUND

### A. Factual background

On the evening of November 20, 1987, Teledo Maria Gibbs and Leata Shirley Jones were walking the streets in Saginaw, Michigan. Shacks approached them that night and asked whether they would accompany him if he paid them $50. Gibbs and Jones thought that Shacks was acting paranoid and scary because he kept his right hand inside the pocket of his jacket. A car approached the scene driven by Michael Harper, the victim in this case. His three passengers were Louise Farris, Ruth Swift, and Donovan Woods. Jones, who was acquainted with Harper, signaled him to stop. She told Harper that something was wrong with Shacks because his hand was in his jacket pocket. Harper then requested Shacks to approach the car and asked him what he was doing.

Woods, the passenger in the front seat of the car, testified that Shacks and Harper talked for some time. Shacks asked Harper if he remembered him "from the penitentiary." Harper responded that he did, and indicated that he even remembered Shacks's name. According to Woods, Shacks then withdrew a gun and fired four shots. Harper was hit in the head by two of the bullets. After Shacks fired the gun, Woods leaned over from the passenger seat to put the car into drive while Shacks fled. The car came to a stop when it hit a nearby telephone pole.

On December 6, 1987, Shacks was arrested in Flint, Michigan and charged with first-degree murder and felony-firearm possession. Shacks maintains that he was not the man who approached Gibbs and Jones on November 20, 1987, was not at the scene of the crime on the night in question, and therefore was not the person who shot Harper. The prosecution, however, produced the testimony of four of the five eyewitnesses to the incident who positively identified Shacks as the one who shot and killed Harper. Gibbs was the only eyewitness who did not identify Shacks. She corroborated, however, the testimony of Jones about what happened that night. Farris and Swift identified Shacks, though they had never seen him before the incident in question. Jones claimed that she recognized Shacks from when she was in junior high school, approximately 16 years prior to the shooting. Woods was the eyewitness who had the greatest familiarity with Shacks. He testified that they grew up together, even spent time in prison together, and had known each other for 20 years.

Shacks claims that the state pressured Farris and Woods into testifying favorably for the prosecution in order to "cut deals" on criminal charges that were unrelated to this case. Shacks's sister testified at trial that his facial hair on the date of the shooting was different from that described by the eyewitnesses. But Shacks did not remember where he was on the night of Harper's death and did not produce any alibi testimony.

### B. Procedural background

On September 26, 1986, the state-court jury convicted Shacks of second-degree murder and felony-firearm possession. The Michigan Court of Appeals affirmed his conviction, and the Michigan Supreme Court denied his application for leave to appeal. In 1995, Shacks filed a motion for relief from judgment with the Michigan trial court, which was denied. He further appealed this ruling, but both the Michigan Court of Appeals and the Michigan Supreme Court summarily denied his application for leave to appeal because Shacks had failed to meet the burden of establishing entitlement to relief under Michigan Court Rules 6.508(D). Under that rule, a defendant is not entitled to post-conviction relief on grounds that were already decided against the defendant, *see* Mich. Ct. R. 6.508(D)(2), or on grounds that could have been raised on direct appeal but were not, *see* Mich. Ct. R. 6.508(D)(3). The Michigan legislature adopted this rule in October of 1989. *See Luberda v. Trippett,* 211 F.3d 1004, 1006–08 (6th Cir.2000) (holding that a habeas petitioner's claims were procedurally barred when his direct appeal was submitted to the Michigan Court of Appeals after the enactment of Michigan Court Rule 6.508(D)).

Shacks filed a petition for a writ of habeas corpus with the United States District Court for the Eastern District of Michigan in March of 1997, citing nine assignments of error. The district court denied his petition, but issued an order granting Shacks's motion for a certificate of appealability on all of his claims. Shacks now appeals, arguing that his con-

stitutional rights were violated because: (1) he was denied a fair trial due to prosecutorial misconduct; (2) the trial court gave improper jury instructions; (3) the trial court denied his motion for a directed verdict on the first-degree murder charge; (4) the prosecution failed to disclose dismissed charges against a key prosecution witness; (5) the trial court allowed the prosecution to submit four photographs of the victim to the jury; (6) the trial court permitted the prosecution to impeach him with evidence of a prior conviction; (7) he was denied the effective assistance of trial counsel; (8) he was denied the effective assistance of appellate counsel; and (9) the cumulative effect of the trial court's errors deprived him of his constitutional rights to a fair trial and to due process of law.

Of these assignments of errors, Shacks raised only the third, fourth, fifth, and sixth ones on direct appeal to the Michigan Court of Appeals. Shacks presented his remaining claims of error to the state courts in his motion for relief from judgment and subsequent appeal. As indicated, the state courts denied relief under Michigan Court Rule 6.508(D). This court has held, however, that "retroactive application of M.C.R. 6.508(D)(3) to defendants convicted prior to its enactment does not qualify as an adequate and independent state procedural bar" for purposes of habeas review. *Rogers v. Howes,* 144 F.3d 990, 991 (6th Cir.1998). As a result, all of Shacks's grounds for relief are subject to our habeas review. *See id.* at 992 (citing the rule that federal courts "will not review a habeas petition where the state prisoner has not first presented his claims to the state courts and exhausted all state court remedies available to him").

## I. ANALYSIS

### A. Standard of review

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132,

110 Stat. 1214 (Apr. 24, 1996) (AEDPA) applies to Shacks's case, because he filed his habeas corpus petition pursuant to 28 U.S.C. § 2254 after the effective date of AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). A federal court is authorized to grant a writ of habeas corpus to a person in custody pursuant to a state-court judgment, but only if

the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ The Supreme Court has declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor,* 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In its elaboration on the meaning of the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495. Finally, a district court's denial of the writ is subject to de novo review. *See Rogers v. Howes,* 144 F.3d 990, 992 (6th Cir.1998).

### B. Prosecutorial misconduct

■ In his first claim for relief, Shacks argues that he was deprived of his rights

to a fair trial and to due process under the Sixth and Fourteenth Amendments because of prejudicial statements made by the prosecutor. He asserts that the prosecutor vouched for the credibility of a key prosecution witness in his closing argument and rendered his opinion about Shacks's guilt. Both of these types of statements are improper. *See United States v. Francis,* 170 F.3d 546, 551 (6th Cir.1999) (holding that improper vouching for a witness "occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury"); *Caldwell v. Russell,* 181 F.3d 731, 737 (6th Cir.1999), *abrogated on other grounds by Mackey v. Dutton,* 217 F.3d 399, 406 (6th Cir.2000) ("Ordinarily, a prosecutor may not express a personal opinion concerning the guilt of the defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching ... improperly invit[es] the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof.").

In support of his vouching claim. Shacks cites the following comment by the prosecutor:

> Now, how in the world could [the testimony of Swift have] been rehearsed? Who could have put her up to those answers in that type of questioning and answering process? No one, *because that is the truth from that witness* and that credibility is for you to judge.

(Emphasis added by Shacks). As for the prosecutor's comments on Shacks's guilt, he cites the following statements:

> At a bare minimum Jessie Shacks came to that intersection to kill someone, and he got Michael Harper.... This was pure and simple, nothing more nothing less than a street execution committed by Jessie Shacks and it is one done in cold blood evidenced by these photographs that were submitted for you.... This man is ruthless, this man is a cold blooded killer. This man has been to prison. This is his way of life to enforce.... Jessie Shacks is different ... because he is a killer, he is a murderer. At the beginning of this trial he sat there with a little halo over his head. And when you start walking into that jury room, that halo has evaporated. Jessie Shacks is guilty of first degree premeditated murder.

Shacks's counsel did not object to any of the prosecutor's statements made during closing argument.

■ This court has been reluctant to grant habeas petitions based on improper prosecutorial statements at closing argument. Indeed, we may not grant such collateral relief unless we "find that the prosecutor's comments constituted more than simply trial error under state law. The misconduct must be 'so fundamentally unfair as to deny [the defendant] due process.'" *Kincade v. Sparkman,* 175 F.3d 444, 445–46 (6th Cir.1999) (citations omitted). When evaluating claims of improper prosecutorial statements, we look at the existence of objections, curative instructions, the likelihood that a jury will be misled as a result of the remarks, and the extent of the evidence against the defendant. *See id.* at 446. "In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Pritchett v. Pitcher,* 117 F.3d 959, 962–64 (6th Cir.1997) (holding that a prosecutor's statements, including "[h]e intended to kill but he killed the wrong person," were not prejudicial enough to warrant granting habeas relief).

Although the prosecutor's statement to the effect that Swift was telling the truth constitutes improper vouching for a wit-

ness, the prosecutor immediately followed this remark by saying that the credibility of Swift's testimony was for the jurors to determine. We therefore conclude that the effect of that statement was not so fundamentally unfair as to deny Shacks due process. *See Kincade*, 175 F.3d at 446.

The remarks made by the prosecutor regarding Shacks's character and degree of guilt present a closer case. They were inflammatory and painted an image of Shacks as an evil person. "The prosecutor thus articulated perhaps the paradigm of the improper 'bad character' argument—that the alleged criminal acts 'fit' the evidence of [the defendant's] character and lifestyle." *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir.2000) (finding prosecutorial misconduct so egregious that the counsel's failure to object at trial constituted ineffective assistance of counsel).

Nevertheless, in light of the totality of factors that we must consider when reviewing a habeas petition, we cannot say that these statements were "so egregious so as to render the entire trial fundamentally unfair." *Pritchett*, 117 F.3d at 964 (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir.1979)). The district court noted the following factors:

> (1) defense counsel did not object to the prosecutor's comments; (2) the trial court instructed the jurors that the attorneys' statements and arguments were not evidence; and (3) the comments were a small part of a long trial in which four eyewitnesses identified Petitioner as the man who shot Michael Harper.

Conveyed by the comments in question was the prosecutor's belief that Shacks murdered Harper with premeditation. But the district court pointed out that the jury must not have believed the prosecutor's comments, because it acquitted Shacks on the first-degree murder charge

and convicted him instead of second-degree murder. Taken together, these factors show that the prosecutor's improper statements, when viewed in light of the entire trial, did not deprive Shacks of his due-process rights. *See Kincade*, 175 F.3d at 446.

## C. Improper jury instructions

Shacks next contends that he was denied his constitutional rights to due process and a fair trial because the instructions to the jury placed a lower burden on the prosecution to prove its case. The jury instruction at issue in Shacks's case was as follows:

> A reasonable doubt is a fair doubt, an honest doubt, growing out of the evidence or lack of evidence in this case .... it's a *fair, honest doubt* based upon reason and common sense.... By stating that the Prosecution must prove guilt beyond a reasonable doubt, I mean *there must be such evidence that causes you to have a firm conviction to a moral certainty of the truth of the charges here made against this Defendant.*

(Emphasis added by Shacks). Shacks claims that two errors arose from this instruction. First, he argues that this instruction equated "reasonable doubt" with "fair doubt," thereby lowering the degree of doubt required to convict. Second, he contends that instructing the jury to have "a firm conviction to a moral certainty of the truth" also lowered the prosecution's burden.

For the purposes of obtaining habeas relief, the jury instructions must be "so infirm that they rendered the entire trial fundamentally unfair." *Austin v. Bell*, 126 F.3d 843, 846 (6th Cir.1997). "If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly." *Id.* In *Cage v. Louisiana*,

498 U.S. 39, 40, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62, 72–73 n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the Supreme Court held an instruction unconstitutional that required the jury to have "an actual substantial doubt" rather than a "reasonable doubt" to acquit a defendant and a "moral certainty" that a defendant was guilty to convict him. It reasoned that this language led the jury to believe that the prosecution's burden of proof was lower than that required by the Due Process Clause. *See id.* at 41, 111 S.Ct. 328. But the Court limited *Cage* in *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). It held that "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Id.* at 5, 114 S.Ct. 1239. Rather, a court must ask on habeas review "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the [due process standard for jury instructions]." *Id.* at 6, 114 S.Ct. 1239.

■ The Court determined in *Victor* that references to "a moral certainty" and an "abiding conviction" would not mislead a reasonable juror. Such references, accordingly, met the requirements of the Due Process Clause. In Shacks's case, the jury was instructed to have "a firm conviction to a moral certainty of the truth of the charges" to find Shacks guilty. We conclude that this instruction "is more like the acceptable language in *Victor* than the unacceptable language in *Cage.*" *Austin*, 126 F.3d at 847. Furthermore, we hold that the reference in the instructions to "fair doubt" rather than "reasonable doubt" was at most ambiguous and does not raise a "reasonable likelihood that the jury has applied the instruction improperly." *Id.* at 846. In sum, the jury instructions provid-

ed to the jury at Shacks's trial neither rendered the entire trial fundamentally unfair nor raised a reasonable likelihood that the jury applied them improperly. *See id.*

D. Denial of motion for a directed verdict of acquittal

Shacks argues, in his third claim for relief, that because the prosecutor failed to establish premeditation and deliberation at the preliminary-examination hearing, the state magistrate erred in binding him over for trial on the first-degree murder charge. For the same reason, he also contends that the trial court erred in denying his motion for a directed verdict of acquittal on that charge. Shacks claims that these aspects of his trial denied him due process of law because presenting the charge of first-degree murder to the jury made it more likely that the jury would reach a "compromise verdict" of second-degree murder than if the first-degree murder charge was not before it.

■ This claim is based on two separate provisions of Michigan law: (1) the state-law right to a preliminary examination and (2) the state-law standard for ruling on motions for a directed verdict. The Michigan Court of Appeals addressed the merits of both issues on Shacks's direct appeal. First, the court held that the issue of Shacks's bindover for trial on the charge of first-degree murder was rendered moot under Michigan law because he was eventually convicted of second-degree murder. This is a state-law issue that does not implicate a federal constitutional right, and is therefore not subject to review in a habeas proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

■ Second, the Michigan Court of Appeals examined whether the trial court erred in weighing the evidence, thereby denying Shacks's motion for directed ver-

dict on the first-degree murder charge. The analysis under Michigan law is similar to the analysis of sufficiency-of-the-evidence claims under federal law. *See Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Citing *Jackson*, the Michigan Court of Appeals held that the trial court did not err in denying Shacks's motion, because the prosecution presented sufficient evidence of premeditation to submit the charge of first-degree murder to the jury. The district court concluded that because the Michigan Court of Appeal's decision was a reasonable application of the standard found in *Jackson*, Shacks's claim did not warrant habeas relief. We agree, and therefore find no merit to this claim.

### E. Nondisclosure of dismissed charges against prosecution-witness Farris

■ Shacks raised on direct appeal the argument that he was denied the right to a fair trial because the prosecution did not disclose to him that the state had dismissed pending charges against Farris, a key witness for the prosecution. He maintains that he would have used this information to impeach Farris on cross-examination, and that this would have supported his theory that the state pressured the prosecution witnesses to testify falsely. The Michigan Court of Appeals held that the prosecution's failure to disclose this information did not materially prejudice Shacks under the doctrine of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

According to the *Brady* doctrine, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Id.* at 87, 83 S.Ct. 1194. Favorable evidence can consist of either exculpatory evidence or impeachment evidence. *See*

*Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir.1998). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). On habeas review, a federal court must ask whether the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

We agree with the district court's conclusion that the failure of the prosecution to disclose to Shacks the dismissed charges against Farris does not undermine confidence in the outcome of Shacks's trial. Although this information should have been forthcoming from the prosecution, other evidence was presented to the jury that the misdemeanor charges pending against Farris were dismissed before Shacks's trial. Furthermore, the overwhelming weight of the evidence against Shacks makes it highly doubtful that "had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375.

### F. Prejudice from admission of photographs

■ Shacks's fifth claim for relief is based on the trial court's decision to admit into evidence graphic photographs of the deceased victim. Twelve photographs were submitted by the prosecution to support its theory that Harper's murder was premeditated and to corroborate identification evidence established through eyewit-

ness testimony. The trial court permitted four of these photographs to be entered into evidence for consideration by the jury. Two were of the victim as he was found behind the steering wheel of his car with gunshot wounds to his head, and the other two were of the victim at the morgue showing injuries to his head and neck. The trial court concluded that portraying the circumstances of the crime and the extent of Harper's injuries outweighed any prejudicial effect that the gruesome images might have had on Shacks's defense.

On Shacks's direct appeal, the Michigan Court of Appeals concluded through an extensive analysis of Michigan law that the trial court did not err in admitting these photographs into evidence. "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow,* 25 F.3d 363, 370 (6th Cir.1994). We conclude that in light of the totality of the evidence produced at trial, the admission of these photographs did not render the trial so fundamentally unfair as to deprive Shacks of his constitutional rights.

G. Impeachment of Shacks with evidence of his prior felony conviction

■ Shacks next contends that he was deprived of his constitutional rights to due process and a fair trial because the prosecution used evidence of his prior conviction for armed robbery to impeach him when he took the stand to testify in his own defense. The trial court determined that the prosecution could attack Shacks's credibility with evidence of his conviction for armed robbery, which occurred in 1975. It reasoned that this evidence could be used to evaluate Shacks's credibility and was sufficiently different from the murder

charge to avoid the jury inferring that Shacks had a general criminal mentality.

The Michigan Court of Appeals reviewed the trial court's decision to allow the prosecution to impeach Shacks with his prior conviction in light of the balancing test set forth under Michigan law. It found no error. We likewise conclude that the use of Shacks's prior conviction did not render his trial so fundamentally unfair so as to deprive him of his constitutional rights.

H. Ineffective assistance of trial counsel

Shacks's seventh claim for relief is based on his contention that the performance of his trial counsel violated his right to effective assistance of counsel under the Sixth Amendment. His argument is twofold. First, he argues that he was denied the effective assistance of counsel at a critical stage of his trial when he unknowingly waived his right to a speedy trial. Second, he contends that his counsel's failure to object to the prosecutor's comments during closing argument and to the court's jury instructions also constitutes ineffective assistance of counsel.

■ After Shacks was arrested in December of 1985, William Martin was appointed to serve as his counsel. Martin proceeded to represent Shacks at the preliminary hearing, but the trial court discharged him on March 10, 1986. Several days later, the court appointed E. Brady Denton, Jr. to serve as Shacks's counsel. Denton later moved to withdraw because he was acquainted with the victim and felt that it would be difficult to set his feelings aside in order to properly represent Shacks. The court conducted a hearing on June 30, 1986, at which time the court granted Denton's motion to withdraw. At the hearing, the court warned Shacks that a new attorney might want to adjourn his July 15, 1986 trial date in order to have an

adequate time to prepare the case. Shacks argues that because Denton was in the process of withdrawing as Shacks's counsel at that hearing, Shacks was denied the assistance of counsel when he agreed to waive his right to a speedy trial.

But the record reveals that Shacks understood and agreed to have his trial postponed if his new counsel requested an adjournment. In fact, after Shacks's new counsel, Rod O'Farrell, was appointed, he promptly moved to adjourn the trial date. The court conducted a hearing on this motion and Shacks expressed his agreement to waive his right to a speedy trial in order to ensure a better defense. This contention fails to raise a claim for either ineffective assistance of counsel or a speedy-trial violation. Technically, Denton was still acting as Shacks's counsel at the hearing on his motion to withdraw.

 Furthermore, determining whether a defendant's right to a speedy trial has been violated requires a balancing of factors, including the length of time of the delay, the reasons for the delay, whether the defendant asserted his right to a speedy trial, and the prejudice, if any, to the defendant. *See Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Shacks's case went to trial on September 16, 1986, only two months after the original date that was set and only nine months after his indictment. Taking all of these factors into account, we conclude that Shacks's "speedy trial" contention lacks merit.

We also conclude that the performance of Shacks's counsel during the trial did not rise to the level of ineffective assistance of counsel. To establish a claim for ineffective assistance of counsel, a habeas petitioner must

> show[ ] that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner]

by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Although Shacks's counsel should have objected to the prosecutor's remarks during closing argument, none of his alleged performance deficiencies was so serious as to deprive Shacks of "reasonably effective assistance." *Id.* Additionally, the second part of the *Strickland* test requires that Shacks establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. Given our assessment that Shacks's first through seventh assignments of trial errors have not established that Shacks was denied a fair trial, we also conclude that any alleged deficiencies in the performance of Shacks's counsel did not prejudice his trial. As a result, we reject Shacks's argument that his constitutional right to effective assistance of counsel was violated.

I. Ineffective assistance of appellate counsel

 Shacks's eighth claim for relief is based on his contention that he was denied his constitutional right to effective appellate counsel. He claims that he met with his appellate counsel and advised him of his belief that his trial was fundamentally

355

unfair due to prosecutorial misconduct, ineffective trial counsel, and the cumulative effect of the errors previously discussed. But "[a]ppellate counsel is not ineffective simply because he or she decides not to raise every possible argument on appeal." *Wright v. United States,* 182 F.3d 458, 466 (6th Cir.1999) (citing *Jones v. Barnes,* 463 U.S. 745, 753, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). The district court concluded that the Michigan Court of Appeals would have found Shacks's claims regarding prosecutorial misconduct and the jury instructions procedurally defaulted because of the failure of Shacks's trial counsel to object at trial, and determined that the other arguments regarding appellate counsel were without merit. We agree. For the reasons set forth above, none of the issues that Shacks's appellate counsel chose not to raise rendered his trial fundamentally unfair. We therefore conclude that Shacks's right to the effective assistance of appellate counsel was not violated.

J. Cumulative error

Finally, Shacks argues that the combined effect of his first eight claims of error rendered his trial fundamentally unfair and violative of his due process rights. "Cumulative error analysis is relevant when there were certain errors at trial which, when considered alone may not deprive a person of due process, but may cumulatively produce a trial that is fundamentally unfair." *United States v. Mays,* 69 F.3d 116, 123 (6th Cir.1995). After reviewing the record, the district court determined that the cumulative effect of the alleged errors at Shacks's trial did not render it fundamentally unfair. We agree, and therefore conclude that Shacks was not deprived of his constitutional right to due process of law.

### III. CONCLUSION

For all of the reasons set forth above, we find no merit in Shacks's claims for habeas relief. Consequently, we AFFIRM the judgment of the district court.