GIBBONS, J., delivered the opinion of the court, in which SILER, J., joined. CLAY, J. (pp. 971-77), delivered a separate dissenting opinion.
OPINION
JULIA SMITH GIBBONS, Circuit Judge.
Petitioner-appellant John J. Eley was convicted in Ohio of aggravated murder and aggravated robbery and sentenced to death. He now appeals the district court’s denial of his petition for a writ of habeas corpus, challenging the state trial court’s failure to conduct a competency hearing, his trial counsel’s effectiveness in developing mitigation evidence, and the trial panel’s consideration of mitigation proof. For the reasons set forth below, we now affirm the district court’s decision and dismiss Ele/s habeas petition.
I.
The Ohio Supreme Court summarized the facts of the case as follows:
During the early afternoon of August 26, 1986, Eley was visiting Melvin Green at the home of Green’s girlfriend in Youngstown. According to Eley, he and Green were just sitting around when Green suggested that they go down to the “Arab store.” Eley and Green left the house and proceeded down a path through the woods leading to the Sinjil Market. Along the way, Green showed Eley a “Black Snub nose gun,” and told Eley he “was going to take the Arab off.” Since the proprietor of the store, Ihsan Aydah, knew Green’s face, Eley *962 agreed to go in alone and rob the store while Green waited outside.
Eley entered the store and told Aydah to put his hands up and to turn and face the wall. Green had told Eley that Aydah had a gun under the store counter, so when Aydah lowered his hands and went under the counter, Eley fired a shot. Eley claimed that he aimed at Aydah’s shoulder. However, the shot hit Aydah on the right side of his head, approximately four inches above the earlobe. Aydah died the next day of shock and hemorrhage due to a gunshot wound to the head.
Just before Eley fired the gun, Green entered the store. After the shot, Green ran behind the counter and got into the cash register. He took Aydah’s wallet while Aydah lay wounded on the floor. As the two left the store, Green gave Eley a brown paper bag with the money and wallet. According to Eley, they went up the street, “got to the path and run up the woods.”
Several days after the murder, Eley was arrested by Youngstown police at the residence of his cousin’s girlfriend, Carlotta Skinner. After his arrest, Eley told police that he and Green had split the money taken in the robbery, which was around $700. However, Eley later gave the money back to Green “because he said it was all on him and he had to get out.”
[After being arrested, i]n his voluntary statement Eley admitted that he and Green had robbed the Sinjil Market, and that he shot Aydah. [The arresting officer] testified that Eley did not appear to be under the influence of alcohol or drugs during the interview and was “very calm” and “passive.”
The grand jury indicted Eley on one count of aggravated murder with a specification that the murder was committed during, or immediately after, the commission of an aggravated robbery (R.C. 2929.04[A][7]), and that Eley was the principal offender. This count also carried a firearm specification. In addition, Eley was indicted on one count of aggravated robbery (R.C. 2911.01[A][1] and [2]) and one count of conspiracy (R.C. 2923.01[A]). Each count carried a firearm specification.
In May 1987, Eley waived his right to a jury trial and opted for a trial before a three-judge panel. Eley pled not guilty to the charges against him, thereby withdrawing a prior plea of not guilty by reason of insanity.... [1]
Trial was held before a three-judge panel on May 11-12, 1987, but the defense chose not to present any evidence. The panel found Eley guilty of aggravated murder, aggravated robbery, the felony-murder capital specification, and two of the three firearm specifications, but not guilty of conspiracy.
During the mitigation hearing, several family members testified on Eley’s behalf. Eley’s mother, Cecilia Joseph, divorced Eley’s father when Eley was seven or eight years old, and stated that Eley had “not much” of a relationship with his father. Joseph testified that on Christmas night 1964, her second husband had been drinking and began choking her and her daughter. At that time, Eley stabbed the second husband with a knife in order to stop him. Joseph testified that Eley dropped out of high school in the ninth grade, but later en *963 tered the Job Corps and learned to be a welder. Eley sent money home to his mother during this time, and gave her money to help her finish paying for nursing school. Joseph stated that while Eley has had problems with drugs and alcohol, he is a better person when he is not under the influence. She characterized Eley as “church oriented,” and believed he had been “born again.”
Eley’s sister, Susan Laury, testified that Eley had helped the family financially while he was in the Job Corps, and that Eley is normally a “quiet, sweet, gentle person that wouldn’t hurt anybody.”
Dr. Douglas Darnall, a clinical psychologist, found Eley to be of borderline intelligence, and ranked him in the twelfth percentile on the Wechsler Adult Intelligence Test. According to Darnall, Eley has a history of chronic alcohol and polysubstance abuse, but exhibited “no evidence of psychosis or major defective disorder.” In addition, Darnall testified that Eley understands the difference between right and wrong. Darnall found Eley to be remorseful, but Eley never mentioned that he felt remorse for the victim. However, two police officers who witnessed Eley’s confession testified that Eley was remorseful before he made that statement. Eley made a short unsworn statement at the mitigation phase that consisted of several biblical quotations from the Book of Romans.
After deliberation, the panel unanimously found that the aggravating circumstance outweighed the mitigating factors beyond a reasonable doubt, and sentenced Eley to death. Upon appeal, the court of appeals affirmed the convictions and sentence of death.
State v. Eley, 77 Ohio St.3d 174, 672 N.E.2d 640, 644-46 (1996). After considering the eighteen issues Eley raised on appeal, the Ohio Supreme Court affirmed the judgment of the court of appeals. Id. at 654. Eley’s petition for a writ of certiorari to the Supreme Court was denied. Eley v. Ohio, 521 U.S. 1124, 117 S.Ct. 2522, 138 L.Ed.2d 1023 (1997).
Eley filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 on September 20, 1996. The state court conducted an evidentiary hearing on Eley’s competency but denied Eley’s motion for a competency determination on the ground that he had no right to be competent in a post-conviction proceeding. The court then denied post-conviction relief on April 1, 1999. State v. Eley, No. 86-CR-484 (Ohio Ct.Com.Pl. Apr. 1,1999). Eley timely appealed, but the Seventh District Court of Appeals affirmed the trial court’s dismissal of the post-conviction petition on November 6, 2001. State v. Eley, No. 99-CA-109, 2001 WL 1497095 (Ohio Ct.App. Nov. 6, 2001). The Ohio Supreme Court declined to exercise jurisdiction over Eley’s post-conviction petition. State v. Eley, 94 Ohio St.3d 1506, 764 N.E.2d 1036 (Table) (Ohio 2002).
On July 12, 2002, Eley’s sister, Susan Laury, filed a notice of intent to file the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, along with motions to stay Eley’s execution, to appoint counsel, and for a competency evaluation to determine if Eley was competent to waive any further appeals. The district court entered a stay, but while the parties were briefing the last two motions, Eley filed a notice of intent to file a habeas petition himself. Eley filed the petition on March 19, 2003, raising fourteen grounds for relief. See Eley v. Bagley, No. 4:02CV1994, 2006 WL 2990520, at *4 (N.D.Ohio Oct.18, 2006). In November 2003, Eley filed a motion to stay the habeas proceeding so that he could file a mental retardation claim in state court pursuant to Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). This *964 claim was later denied. On October 16, 2006, the district court denied his habeas petition on all fourteen grounds. Eley, 2006 WL 2990520.
Eley timely appealed and now raises three issues. The district court granted a Certificate of Appealability (“COA”) as to the first two: (1) whether the trial court violated Eley’s due process rights by failing to hold a competency hearing; and (2) whether Eley’s trial counsel was constitutionally ineffective by failing to investigate or prepare mitigating evidence for the penalty phase. We expanded the COA to include: (3) whether the three-judge trial panel failed to consider and give effect to valid mitigation evidence at sentencing.
II.
The Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub.L. No. 104-132, 110 Stat. 1214 (1996), governs all habeas petitions filed after April 24, 1996. See Lindh v. Murphy, 521 U.S. 320, 326-27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). AEDPA provides:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d)(1)-(2).
A state court adjudication is “contrary to” Supreme Court precedent under § 2254(d)(1) “if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law,” or “if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result.” Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court makes “an unreasonable application of’ Supreme Court precedent under § 2254(d)(2) “if the state court identifies the correct governing legal rule from [the Supreme] Court’s cases but unreasonably applies it to the facts of the particular ... case,” or if the court unreasonably extends or refuses to extend existing Supreme Court precedent to new factual situations where it should apply. Id. at 407, 120 S.Ct. 1495. Under AEDPA, the question for this court to answer “is not whether a federal court believes the state court’s determination was incorrect but whether that determination was unreasonable — a substantially higher threshold.” Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). Factual findings made by the state courts based on the trial record are entitled to a presumption of correctness that may be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir.1998).
However, federal courts need not review every point of error raised by a habeas petitioner. When a “state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice ... or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.” Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In this circuit, to determine whether a federal claim has been proce *965 durally defaulted, we apply a three-prong test laid out in Maupin v. Smith, 785 F.2d 135 (6th Cir.1986):
First, the court must determine that there is a state procedural rule that is applicable to the petitioner’s claim and that the petitioner failed to comply with the rule.... Second, the court must decide whether the state courts actually enforced the state procedural sanction .... Third, the court must decide whether the state procedural forfeiture is an “adequate and independent” state ground on which the state can rely to foreclose review of a federal constitutional claim....
Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir.2001) (quoting Maupin, 785 F.2d at 138). If the state procedural rule was not complied with and that rule was an “adequate and independent” ground for default, we may still excuse the default if the petitioner can demonstrate “that there was ‘cause’ for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.” Maupin, 785 F.2d at 138. In State v. Cole, 2 Ohio St.3d 112, 443 N.E.2d 169, 171 (1982), “the Ohio Supreme Court held that res judicata is a proper basis upon which to dismiss an ineffective-assistance claim in a petition for post-conviction relief where a defendant who is represented by new counsel on direct appeal fails to raise that claim and the basis for that claim ‘could be fairly determined without examining evidence outside the record.’ ” Fautenberry v. Mitchell, 515 F.3d 614, 633 (6th Cir.), cert. denied, — U.S. —, 129 S.Ct. 412, 172 L.Ed.2d 299 (2008). In Fautenberry, we held that “Ohio’s application of res judicata pursuant to Cole is an actually enforced, adequate and independent state ground upon which the Ohio state courts consistently refuse to review the merits of a defendant’s claims.” Id.
III.
A.
We first address Eley’s claim of deprivation of due process by the state trial panel’s failure to conduct a competency hearing. “The due-process right to a fair trial is violated by a court’s failure to hold a proper competency hearing where there is substantial evidence that a defendant is incompetent.” Filiaggi v. Bagley, 445 F.3d 851, 858 (6th Cir.2006) (citing Pate v. Robinson, 383 U.S. 375, 385-86, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)). A defendant can be adjudged competent to stand trial if he has “sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.” Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). “[Evidence of a defendant’s irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but ... even one of these factors standing alone may, in some circumstances, be sufficient.” Drope v. Missouri, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).
Eley argues that there was significant evidence of his incompetency at trial and therefore the three-judge trial panel should have held an evidentiary hearing on his competency, even after his counsel withdrew a request for one. Eley points to various facts in the record to support this assertion. In depositions and affidavits taken to support his state post-conviction petition, Eley’s trial counsel reported that Eley often rambled about abstract religious ideas instead of cooperating with forming a defense. They further stated that Eley often had difficulty communicat *966 ing with counsel because of his below-average intelligence and education. At the penalty phase of trial, Eley’s unsworn statement to the court was a series of biblical quotations from the Book of Romans. Eley contends that his mental incompetence directly resulted in his refusal to accept a plea offer that would have resulted in his serving six years in prison. During his post-conviction proceedings, the Ohio post-conviction trial court held a competency hearing, at which Dr. Jeffrey Smalldon, a clinical psychologist, testified that Eley was inclined to make “pseudo-philosophical statements that were often couched in religious terms, often very difficult to understand.” Smalldon also suspected that Eley may have suffered from brain damage — possibly due to having had a forceps delivery, to his abusive upbringing, or boxing as an adolescent — although due to Eley’s failure to cooperate, Small-don could not confirm any of his suspicions. Eley contends now that there was sufficient evidence to give the trial judges cause to suspect that he was incompetent to stand trial.
The Ohio Supreme Court considered and rejected this argument. The court first held that Eley had waived his right to a competency hearing “knowingly and intelligently” after having requested one. Eley, 672 N.E.2d at 650. This holding is problematic. As the Supreme Court warned in Pate v. Robinson, “[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently ‘waive’ his right to have the court determine his capacity to stand trial.” 383 U.S. at 384, 86 S.Ct. 836. However, in the alternative, the Ohio Supreme Court held that even if the waiver were invalid, “any error by the trial court in not conducting a hearing was harmless, since the record fails to reveal sufficient indicia of incompetency.” Eley, 672 N.E.2d at 650. According to the court, Eley had failed to cite any portion of the record that revealed “any suggestion of incompetency.” Id.
Because evidence at trial did not suggest that Eley was incompetent, we cannot find that the Ohio Supreme Court’s decision on this issue was unreasonable. The test for whether the trial court erred in not holding a proper hearing is whether a reasonable judge in that position would have “experienced doubt with respect to competency to stand trial.” Filiaggi, 445 F.3d at 858. The state trial record reveals the following. During a suppression hearing held less than a week before trial, Eley testified to his recollection of the confession he gave police. His answers on both direct and cross-examination were cogent and show that he had an understanding of his objective at the hearing. Nothing in the record suggests Eley was incompetent during the guilt phase of trial. At the penalty phase, Eley gave a brief, unsworn statement that consisted of nothing but Bible verses. While the statement was perhaps unusual, it does not suggest a lack of competency. Nor does the penalty phase testimony about Eley’s limited education and low intelligence suggest that Eley was incompetent. Moreover, the state trial court was aware of Darnall’s opinion that Eley was competent to stand trial.
Much of the evidence that Eley provides to suggest his lack of competency was generated nearly a decade after his trial. For example, in preparation for his state post-conviction action, Smalldon reported that Eley may have had brain damage due to head injuries suffered during Eley’s youth. Further, Smalldon reported that he was unable to obtain hard test data to corroborate various opinions he had formed because Eley was uncooperative during his examination. Smalldon’s report was not made until 1996, and he did not testify at a hearing until January 1997, roughly a decade after the trial. Although *967 Smalldon believed that many of the factors that led him to his conclusions “perhaps” would have affected Eley in the same way at the time of trial, he was only able to conclude that there were serious questions about Eley’s competency “at present,” meaning in 1996-1997. Smalldon’s assessments did not speak to Eley’s competency at the time of trial, which is the relevant legal inquiry. For similar reasons, depositions from Eley’s trial counsel during post-conviction proceedings indicating counsel’s frustration with Eley’s uncooperative nature and religious beliefs during trial do not satisfy the test laid out in Filiaggi
Retroactive determinations of competency are difficult, and any such determination must be based on “ ‘evidence derived from knowledge contemporaneous to trial.’ ” Bowers v. Battles, 568 F.2d 1, 4 (6th Cir.1977) (quoting Conner v. Wingo, 429 F.2d 630, 637 (6th Cir.1970)). The evidence proffered by Eley from the state post-conviction proceedings has virtually no probative value. The psychological evaluation of Eley performed by Darnall just before Eley’s sentencing hearing, which concluded he was sane and competent, is far more probative of his competency at trial than examinations conducted nearly ten years later. Although the Ohio Supreme Court’s holding was that the failure to conduct a competency hearing “was harmless,” the decision was still based on the critical finding that “the record fails to reveal sufficient indicia of incompetency.” Eley, 672 N.E.2d at 650. This finding did not involve an unreasonable application of clearly established Supreme Court precedent, and we therefore affirm the district court on this issue.
B.
Eley’s second claim is that his counsel performed ineffectively by failing to investigate and present adequate mitigating evidence at the penalty phase. He argues that his counsel relied too heavily on the Presentence Investigation Report (“PSR”) and therefore decided not to interview much of Eley’s family. Eley also argues that counsel failed to present important social history evidence, such as his difficult upbringing, history of alcohol and drug abuse, and employment background. Further, Eley contends that his defense was further undermined by counsel’s failure to request an independent psychological evaluation by a qualified mitigation psychologist. According to Eley, counsel’s failures resulted in the state courts’ not fully considering potentially mitigating factors such as his true remorse for his actions or possible mental defects.
The district court found that Eley had not raised any of these arguments until his state post-conviction petition, where the Ohio court held that the claims were barred by res judicata. Eley, 2006 WL 2990520, at *28. Therefore, the district court held that this claim was procedurally defaulted. Id. A review of the state court opinions reveals this is only partially true. The state post-conviction court found that only a portion of Eley’s claim — that counsel was ineffective for not hiring a toxicologist or pharmacologist — was barred by res judicata because it was not based on evidence outside the record and therefore could have been raised on direct appeal. Eley, 2001 WL 1497095, at *10. However, the court of appeals did reach the rest of Eley’s ineffective assistance claim on the merits and found that he had not shown that any evidence uncovered by further investigation would have not been cumulative to the evidence disclosed in the PSR. Id. at *9, *12. Therefore, we review the rest of his claim of ineffective assistance of counsel on the merits.[2]
*968 The Supreme Court set forth the test for ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish this claim, Eley must show (1) that his counsel’s performance was deficient, and (2) that the deficiency prejudiced his defense. Id. at 687-88, 104 S.Ct. 2052. To prove deficiency, Eley must show that “counsel’s representation fell below an objective standard of reasonableness.” Id. Prejudice can be shown by proving “that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. 2052. Counsel’s failure to reasonably investigate a defendant’s background or present mitigating evidence to the jury at sentencing can constitute ineffective assistance. Wiggins v. Smith, 539 U.S. 510, 522-23, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Williams, 529 U.S. at 395-96, 120 S.Ct. 1495.
When assessing whether an attorney’s mitigation investigation was deficient, we consider “not only the quantum of evidence already known to counsel,” but also whether that evidence should have led “a reasonable attorney to investigate further.” Wiggins, 539 U.S. at 527, 123 S.Ct. 2527. To demonstrate prejudice, Eley must show that any new evidence differs “in a substantial way — in strength and subject matter — from the evidence actually presented at sentencing.” Fautenberry, 515 F.3d at 626 (citation and internal quotation marks omitted). “[T]he failure to present additional mitigating evidence that is merely cumulative of that already presented does not rise to the level of a constitutional violation.” Nields v. Bradshaw, 482 F.3d 442, 454 (6th Cir.2007) (quoting Broom v. Mitchell, 441 F.3d 392, 410 (6th Cir.2006)) (internal quotation marks omitted). The Ohio Court of Appeals’s treatment of this claim hinged on this last issue — the court found that Eley could not show the new evidence he proffered was more than merely cumulative of what was presented at mitigation. Ohio lists the “history, character, and background” of the offender as a statutory mitigating factor. Ohio Rev.Code Ann. § 2929.04(B).[3] Therefore, the facts Eley claims counsel should have presented could be probative of further mitigation.
At the mitigation hearing, Eley first offered the testimony of several law enforcement officials. A sergeant with the Ma-honing County Jail testified that Eley had not violated any rules or regulations before or during trial. Two officers with the Youngstown Police Department testified that Eley appeared remorseful at the time he admitted responsibility for his actions. Eley’s mother, Cecilia Joseph, and sister, Susan Laury, testified that Eley had difficulty with school and dropped out when he was sixteen years old. Eley then enlisted in the Job Corps and received training to be a welder, and Joseph and Laury testified that Eley sent his mother money to support her training for a nursing degree. Joseph testified that Eley was church-oriented and often attended church near her home. Joseph and Laury both testified to Eley’s poor relationship with his father and step-father. Once Eley’s father and mother divorced, when Eley was around fourteen, Eley’s father stopped seeing him. One Christmas, Joseph’s second husband — Eley’s step-father — became violent with Joseph and Laury. Eley attempted to stop his step-father from strangling his *969 mother by stabbing him. Joseph and Laury testified that although Eley was typically a quiet, sweet, and gentle person, his habitual use of drugs and alcohol often led to his becoming a different person when he was impaired. Darnall, a state psychologist and witness, testified that Eley had a chronic history of both alcohol and poly-substance abuse.
In the state post-conviction proceeding, Eley presented additional mitigating evidence that counsel had failed to uncover at his sentencing hearing. Joseph testified that Eley underwent a forceps delivery at birth. A former girlfriend testified that Eley was addicted to heroin in the 1970s and had been a binge drinker. Eley’s step-mother testified she knew Eley had been “eating aspirin” as early as the second or third grade. Eley’s younger sister testified that the family rarely ate nutritional meals when Eley was growing up, which she believed may have affected him later in life. Several witnesses testified that Eley became violent or belligerent when he was drinking.
The Ohio Court of Appeals recounted the applicable standard under Strickland. It wrote that although “[i]t is the obligation of counsel to make reasonable investigations ... [a] particular decision not to investigate must be examined for reasonableness under the circumstances with strong measures of deference to counsel’s judgments.” Eley, 2001 WL 1497095, at *9. After reviewing the evidence presented at the sentencing phase of trial, the court concluded that “a quantum of information contained in the affidavits appears to be repetitive of evidence presented by trial counsel at the mitigation stage.” Id. As for the evidence of a forceps delivery, the court found this evidence to be “of the type that would normally be rejected by three judge panels when weighing mitigating factors.” Id. Therefore, the court concluded that Eley had shown no prejudice. Id. Later, when discussing trial counsel’s alleged overreliance on the PSR, the court repeated its prior conclusion that counsel’s behavior was “not unreasonable considering the fact that [the PSR] uncovered similar evidence that would have been uncovered had a specific investigation been conducted.” Id. at *12.
We cannot find that this conclusion was an unreasonable application of federal law. The record shows that counsel prepared and questioned several witnesses, including both law enforcement and family. The question of whether counsel conducted an “adequate investigation” is governed by a “ ‘presumption of reasonableness imposed by Strickland [and is] hard to overcome.’ ” Beuke v. Houk, 537 F.3d 618, 643 (6th Cir.2008) (quoting Campbell v. Coyle, 260 F.3d 531, 552 (6th Cir.2001)). To the extent that trial counsel failed to further investigate Eley’s upbringing or history of drug and alcohol abuse — that is, to the extent counsel’s performance was deficient — Eley cannot show that this failure prejudiced his ability to prove mitigating circumstances. Although the evidence presented at the post-conviction hearing did go into more depth than the evidence presented by trial counsel at sentencing, it did not cover any new subject matter and was not substantially more persuasive than the trial evidence. Much of what Eley claims should have been presented at the sentencing hearing was, in fact, presented, as counsel elicited testimony regarding Eley’s difficult upbringing, employment history, drug and alcohol addictions, and good behavior in prison. Therefore, we find that Eley’s second claim is without merit, and we affirm the judgment of the district court on this issue.
C.
Finally, Eley claims that his Eighth and Fourteenth Amendment rights were violat *970 ed by the three-judge trial panel’s failure to properly consider valid mitigation evidence at sentencing. He maintains that the panel did not consider the evidence he presented regarding his difficult upbringing, his history of drug and alcohol abuse, his low intelligence level, and his remorse for the crime.[4] Eley supports this claim by noting that the panel’s discussion of mitigating factors in its sentencing opinion is devoid of any mention of this evidence. He argues that “[t]he fact that the three-judge panel ... did not mention any of the previously noted evidence in mitigation is strong evidence that such factors were not properly considered.” Therefore, according to Eley, when the trial judges excluded the evidence from their consideration, they violated the Supreme Court’s ruling in Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Further, Eley argues that the omission of reference to the evidence violates Ohio Rev.Code Ann. § 2929.03(F),[5] which sets forth the content required in a sentencing opinion, thus violating his due process rights under Hicks v. Oklahoma, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980).
In Lockett v. Ohio, the Supreme Court held that “the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.” 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In that case, the Ohio death penalty statute did not permit the sentencing judge to consider factors such as the defendant’s character, prior record, and age. See id. at 597, 606, 608, 98 S.Ct. 2954. The Court extended this holding in Eddings; just as the statute may not restrict certain factors from being considered as mitigation, the sentencing judge cannot, as a matter of law, refuse to consider appropriate evidence either. 455 U.S. at 108-09, 114-17, 102 S.Ct. 869. “The sentencer[s] ... may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration.” Id. at 114-15, 102 S.Ct. 869.
If a trial court considers unconstitutional aggravating factors, the Supreme Court has held that this error can be cured by the state appellate court “by independently ‘reweighing’ aggravating and mitigating factors and reaching a sentence without the consideration of the factors found impermissible at the trial level.” See Lundgren v. Mitchell, 440 F.3d 754, 783 (6th Cir.2006) (citing Clemons v. Mississippi, 494 U.S. 738, 740, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990)).
*971 In this case, Eley is correct that the trial court’s sentencing opinion is somewhat sparse in its analysis of the mitigation evidence.[6] However, Eley’s conclusion that the court’s lack of detail amounts to a refusal, as a matter of law, to consider any of his mitigating evidence is not logical. Although the trial court did not elaborate on the precise evidence it had considered, its opinion does state that it gave careful and complete scrutiny of all the mitigating factors, which implies at least that it did not explicitly refuse to consider relevant evidence. As the Ohio Court of Appeals noted, and as recounted above, the trial court heard evidence on all of the mitigating factors that Eley claims were absent from its consideration. See State v. Eley, No. 87 CA 122, 1995 WL 758808, at *5-6 (Ohio Ct.App. Dec. 20, 1995).
Moreover, even if the trial court did err in its weighing of the aggravating and mitigating factors or by not following Ohio statutory procedural requirements, both the Ohio Court of Appeals and the Ohio Supreme Court cured the error by carefully and independently reweighing the evidence. The court of appeals considered not only the mitigation evidence Eley claims was ignored, but it also considered additional evidence of Eley’s head injuries, the possibility of residual doubt, the fact that Eley’s co-defendant went unpunished, whether the prosecution committed misconduct, and whether the trial court improperly admitted gruesome photographs. Id. at *24-26, *29-30. The court of appeals concluded that “the aggravating circumstance [Eley] was found guilty of committing outweighs the mitigating factors in this case.” Id. at *30. The Ohio Supreme Court did the same thing. It found “nothing in the nature and circumstances of the offense to be mitigating [because] Eley participated in a robbery where, under the circumstances, a murder was likely to occur.” Eley, 672 N.E.2d at 653. It found Eley’s history, character, and background to be entitled to only “modest weight.” Id. The court gave “some weight” to Eley’s “longstanding devotion and care for his family” and the fact that “Eley has shown remorse.” Id. at 654. Nonetheless, the Ohio Supreme Court also concluded that “the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt.” Id.
Because, under Baston v. Bagley, 420 F.3d 632, 637 (6th Cir.2005), any defect in the trial court’s sentencing was cured by the appellate courts’ reweighing of the evidence presented on direct appeal, we affirm the district court on this issue.
IV.
For the reasons set forth above, we affirm the judgment of the district court and dismiss Eley’s petition for a writ of habeas corpus.

. According to an affidavit of trial counsel, before trial Eley refused to accept various plea offers that were conditioned on Eley's testimony against Green, including an offer of a voluntary manslaughter charge with a six-year sentence.

. "Out of an abundance of caution,” the district court did reach the merits of this claim in the alternative and rejected it. See Eley, 2006 WL 2990520, at *28-31.

. Although the statute has undergone a minor stylistic change, the version in effect in 1987, when Eley was sentenced, is in all relevant respects identical to the present version. See, e.g., State v. Glenn, 28 Ohio St.3d 451, 504 N.E.2d 701, 711 (1986).

. Eley also claims the court should have considered that he was under strong duress when he committed the crime, that he cooperated with law enforcement, and that he had undergone a religious conversion since the homicide. However, Eley did not fairly present these sub-claims to the state courts, and he is therefore barred from raising them here. See O’Sullivan v. Boerckel, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); Leroy v. Marshall, 757 F.2d 94, 97 (6th Cir.1985).

. Ohio Revised Code § 2929.03(F) states in relevant part;
The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors.

. The extent of the trial court’s analysis was quite limited. The court first quickly recounted each category of mitigating factor provided by statute and summarily concluded that none of them applied to Eley’s case. It then concluded:
Upon full, careful and complete scrutiny of all the mitigating factors setforth [sic] in the statutes or called to the Court's attention by defense counsel in any manner and after considering fully the aggravating circumstances, which exist and have been proven beyond a reasonable doubt, the Court concludes that the aggravating circumstances do outweigh all the mitigating factors, advanced by the Defendant, beyond a reasonable doubt as is required by [Ohio Rev.Code Ann. § ] 2929.03(D)(3).
State v. Eley, No. 86-CR-484, at 4 (Ohio Ct. Com.Pl. July 21, 1987).