NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0535n.06

No. 09-3484

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Aug 20, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| KOREY L. BAKER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Southern |
| EDWIN C. VOORHIES, JR., Warden, | ) | District of Ohio |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

Before: BOGGS and CLAY, Circuit Judges; and WISEMAN, District Judge.[*]

BOGGS, Circuit Judge. Korey Baker appeals the district court's order denying his petition for a writ of habeas corpus. His principal argument is that his state-court appellate counsel was constitutionally ineffective for failing to challenge his sentence under *Blakely v. Washington*, 542 U.S. 296 (2004). Some four months after Baker's conviction became final, in a sharp break with state appellate precedent, the Ohio Supreme Court held that Ohio's felony-sentencing statute did indeed violate *Blakely*. *See State v. Foster*, 845 N.E.2d 470, 484 (Ohio 2006). However, we have already held three times that an Ohio attorney was not ineffective for failing to anticipate the outcome in *Foster*. *See Henley v. Brunsman*, No. 08-3288, 2010 WL 2181804 (6th Cir. June 2, 2010); *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285-86 (6th Cir. 2010); *Benning*

---

[*] The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

No. 09-3484
*Baker v. Voorhies*

*v. Warden, Lebanon Corr. Inst.*, 345 F. App'x 149, 157 (6th Cir. 2009). Because the facts of this case are not materially distinguishable, we affirm the district court's denial of habeas relief.

## BACKGROUND

### A. Baker's Trial and Sentencing

In September 2003, Baker shot and injured another individual in a confrontation. He was subsequently convicted in Ohio state court of two felonies – attempted murder, *see* Ohio Rev. Code §§2903.02, and felonious assault, *see id.* §2903.11, both with a firearm specification. At the time of his sentencing in February 2004, Ohio's then-controlling sentencing statute required the sentencing judge to impose the statutory *minimum* sentence for any felony conviction "unless one or more of the following applie[d]":

> (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
>
> (2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

*Id.* §2929.14(B) (2002); *see also Foster*, 845 N.E.2d at 490.

The trial judge found on the record that the imposition of minimum sentences would demean the seriousness of Baker's conduct and would not adequately protect the public. Consequently, the judge imposed non-minimum sentences of nine years for the attempted murder conviction and six years for the felonious assault conviction, to run consecutively. With the addition of a mandatory three-year term for the firearm specifications, Baker's total sentence was eighteen years.

**B. Baker's Direct Appeal**

Baker filed a notice of appeal with the Court of Appeals of Ohio, Second Appellate District ("Second District") in March 2004. On June 24, 2004 – just over two weeks before Baker filed his appellate brief – the United States Supreme Court decided *Blakely*, which "appl[ied] the rule [the Court had previously] expressed in *Apprendi v. New Jersey*[ that] '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" 542 U.S. at 301 (quoting *Apprendi*, 530 U.S. 466, 490 (2000)) (internal citation omitted).

Baker, through counsel, filed his appellate brief on July 9, 2004. In it, Baker did not challenge his sentence under *Blakely* or *Apprendi*. Instead, he argued that his trial counsel had been ineffective in various respects unrelated to sentencing: namely, by (1) failing to request a jury instruction on the lesser included offense of aggravated assault, (2) calling a witness who undermined Baker's self-defense theory, and (3) not objecting to purported prosecutorial misconduct.

In January 2005, the Second District affirmed Baker's conviction and sentence, although it agreed that "evidence presented at trial could have supported an instruction for aggravated assault" and that the defense witness's testimony "was not helpful to [Baker], particularly [his] claim that [he] had acted in self defense." Baker did not file a timely appeal to the Ohio Supreme Court, but later filed a motion for delayed direct appeal, which was denied.

**C. Baker's Application to Reopen**

In February 2005, Baker, now acting pro se, filed an application to reopen his direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B). That rule provides that a criminal defendant,

within ninety days of an unfavorable appellate decision, "may apply [to the appellate court where his appeal was decided] for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel." In his application, Baker argued that his appellate counsel had provided ineffective assistance by failing to challenge his sentence under *Blakely*.

The Second District denied Baker's application to reopen. In so doing, it apparently misconstrued Baker's claim that appellate counsel had been ineffective for failing to argue *Blakely* on appeal as a claim that appellate counsel was ineffective for failing to argue that *trial counsel* had been ineffective for failing to argue *Blakely* at the time of *sentencing*. Having thus misconstrued Baker's claim, the Second District concluded that trial counsel had not been not ineffective, and that appellate counsel had therefore not been ineffective for failing argue trial counsel's ineffectiveness. Baker appealed to the Ohio Supreme Court, which dismissed his appeal in July 2005 as "not having any substantial constitutional question."

**D. Baker's Federal Habeas Petition**

On February 10, 2006, Baker filed a timely petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254. He argued that he was entitled to habeas relief because (1) the imposition of a greater-than-minimum term of imprisonment on the basis of a judicial determination that a minimum sentence would "demean the seriousness of [his] conduct" and

"w[ould] not adequately protect the public" violated *Blakely*; and (2) his appellate counsel was constitutionally ineffective for failing to raise this argument before the Second District.[1]

The district court concluded that appellate counsel was not ineffective, since "at the time Baker's direct appeal was filed, . . . counsel had no reason to believe that a *Blakely* challenge would be successful in Ohio and good reason to believe that [it] would not be successful . . . ." *Baker v. Voorhies*, No. 3:06cv00045, slip op. at 6 (S.D. Ohio Mar. 12, 2009). The district court concluded that Baker's substantive *Blakely* claim was procedurally defaulted. Accordingly, it denied Baker's petition. Baker timely appealed.

## STANDARD OF REVIEW

We review a district court's habeas ruling *de novo*. *Souter v. Jones*, 395 F.3d 577, 584 (6th Cir. 2005). Under the Antiterrorism and Effective Death Penalty Act, when a state court has adjudicated a claim on the merits, a federal court may grant the writ only if the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). By contrast, when the state

---

[1] Baker also asserted that the sentencing judge's imposition of *consecutive* sentences based on judge-found "facts" violated *Blakely*. However, on appeal, Baker has withdrawn this argument as vitiated by the Supreme Court's intervening decision in *Oregon v. Ice*, 129 S. Ct. 711 (2009), which held that this practice does not violate the Sixth Amendment.

court has not addressed the merits of a claim, a federal court reviews that claim *de novo*. *Maples v. Stegall*, 340 F.3d 433, 436-37 (6th Cir. 2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

## DISCUSSION

### A. Ineffective Assistance of Appellate Counsel

We begin by addressing Baker's assertion of ineffective assistance of appellate counsel, which, if meritorious, would serve both as a free-standing ground for habeas relief and as an excuse for any potential procedural default of Baker's *Blakely* claim. Because the Second District misconstrued Baker's application to reopen, Baker's ineffective-appellate-assistance claim has not been adjudicated by a state court. We therefore review it *de novo*. *Maples*, 340 F.3d at 436-37.

In a recent case involving a similar assertion of ineffective assistance for failure to raise a *Blakely* claim, we explained the controlling standard as follows:

> *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), requires that a defendant raising an ineffective-assistance claim show both that counsel performed deficiently and that the defendant was prejudiced by counsel's deficient performance. *Id.* at 687-91. In order to demonstrate deficient performance, [the defendant] must show that his appellate counsel made an objectively unreasonable decision to raise other issues instead of raising a *Blakely* claim, "meaning that [the *Blakely* claim] 'was clearly stronger than issues that counsel did present.' " *See Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009) (quoting *Smith v. Robbins*, 528 U.S. 259, 285, 288, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000)).
>
> [The defendant] must also show prejudice, which in the appellate context means showing "a reasonable probability that, but for his counsel's unreasonable failure to" raise a *Blakely* claim on appeal, "he would have prevailed." *See Robbins*, 528 U.S. at 285, 120 S. Ct. 746. Furthermore, when reviewing the actions of appellate counsel, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Smith v. Murray*, 477 U.S. 527, 536, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052).

*Thompson*, 598 F.3d at 285-86 (second and fourth alterations in original).  As we explain below, Baker cannot satisfy either of *Strickland*'s requirements.

**1.  *Sufficiency of Counsel's Performance***

Because *Strickland* "requires this court to evaluate trial counsel's performance 'from counsel's perspective at the time of the alleged error and in light of all the circumstances,'" our inquiry is whether it was constitutionally unreasonable "to fail to make a *Blakely* objection on [July 9, 2004], in Ohio's [Second] District." *Benning*, 345 F. App'x at 157.  Three times already, a panel of this court has rejected a habeas petitioner's argument that his counsel's failure to raise a Sixth Amendment challenge to Ohio's felony-sentencing statute during the period between *Blakely* and *Foster* constituted ineffective performance.  *See Henley*, 2010 WL 2181804; *Thompson*, 598 F.3d 281; *Benning*, 345 F. App'x 149.[2]  Baker, however, would have us reach a different result here.

Admittedly, this case is superficially distinguishable from *Henley*, *Thompson*, and *Benning* on the ground that Baker's appeal was filed so soon after *Blakely* was issued.  In that troika of cases, we found that counsel were not ineffective in part because Ohio's appellate courts had already expressly rejected *Blakely*'s applicability to Ohio's sentencing scheme at the time counsel failed to

---

[2]  We note for completeness's sake that the *Benning* panel held that Benning's *appellate* counsel was ineffective for failing to raise a *Blakely* challenge to Ohio's sentencing scheme, even though *trial* counsel was not.  345 F. App'x at 158.  However, this is because Benning's appeal lay in Ohio's First District; as we will discuss further below, between Benning's sentencing and his appeal, the First District, alone among Ohio's appellate courts, held that Ohio's felony-sentencing statute *did indeed* violate *Blakely*.  Because no such decision existed in *any* district at the time *Baker*'s appeal was filed, the ineffective-appellate-assistance branch of the *Benning* decision is not on point.  *See Thompson*, 598 F.3d at 287-88 (distinguishing *Benning*'s ineffective-appellate-assistance holding and following its ineffective-trial-assistance holding).

assert a *Blakely* argument. In this case, by contrast, no Ohio court had issued an opinion on the impact of *Blakely* at the relevant juncture.[3] Nonetheless, we believe the same result we reached in our prior cases is compelled here.

Our survey of the law of which Baker's counsel should have been aware begins in 2000, when the United States Supreme Court decided *Apprendi*. That case involved a defendant who had been convicted in New Jersey state court of a firearm offense punishable by no more than ten years of imprisonment, but whose sentence had been increased to 12 years under a separate statute providing for "an 'extended term' of imprisonment" if the trial judge "f[ound], by a preponderance of the evidence, that '[t]he defendant . . . acted with a purpose to intimidate . . . because of race . . . .'" 530 U.S. at 468-69 (quoting N.J. Stat. Ann. § 2C:44-3(e) (West Supp. 1999-2000)). The Court held that the sentence enhancement violated the Sixth Amendment, because "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum" – there, the purpose with which the defendant acted in committing the crime – "must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 489.

Thereafter, defendants in the Ohio state courts challenged Ohio's felony-sentencing scheme under *Apprendi*, arguing that it suffered from the same infirmities as the New Jersey statute. These challenges, however, invariably failed – both in the Second District, *see, e.g.*, *State v. Adkins*, No. 2002-CA-113, 2003 WL 1598421 (Ohio Ct. App. 2d Dist. Mar. 28, 2003); *State v. Robinson*, No.

---

[3] It appears that the first Ohio appellate decision rejecting *Blakely*'s applicability to the state's sentencing scheme was issued the very day Baker filed his appeal. *See State v. Bell*, No. C-030726, 2004 WL 1531904, at *5 (Ohio Ct. App. 1st Dist. July 9, 2004). We assume *arguendo* that Baker's appellate counsel was justifiably unaware of it.

18870, 2002 WL 191650 (Ohio Ct. App. 2d Dist. Feb. 8, 2002); *State v. Brown*, No. 18643, 2002 WL 91088 (Ohio Ct. App. 2d Dist. Jan. 25, 2002); *State v. Gambrel*, No. 2000-CA-29, 2001 WL 85793 (Ohio Ct. App. 2d Dist. Feb. 2, 2001), and elsewhere.[4] Typical of these decisions is *State v. Gambrel*, in which the Second District held that *Apprendi* did not apply to Ohio's scheme because, among other things, the judicial assessment that a certain sentence would or would not "adequately reflect[] the seriousness of the offender's conduct" is merely a discretionary judgment of the type "courts typically consider when making sentencing decisions," rather than a bona fide "'factual' determination[]" such as the determination of the defendant's motive in *Apprendi*. 2001 WL 85793, at *5-6.

On June 24, 2004, the United States Supreme Court decided *Blakely*, which, in its own words, "require[d the Court] to apply the rule [it had already] expressed in *Apprendi* . . . ." 542 U.S. at 301. *Blakely* had been convicted of second-degree kidnaping with a firearm, for which a Washington statute prescribed a "standard range" of imprisonment of 49-53 months; the judge, however, had increased Blakely's sentence to 90 months under a provision of the same statute allowing an "exceptional sentence" of up to 10 years upon a judicial determination that the offense had been committed with "deliberate cruelty." *Id.* at 299-300. Before the Supreme Court,

---

[4] *See, e.g.*, *State v. Elkins*, 773 N.E.2d 593 (Ohio Ct. App. 10th Dist. 2002); *State v. Huntley*, No. 02-CA-15, 2002 WL 31769238 (Ohio Ct. App. 4th Dist. Dec. 9, 2002); *State v. Wilson*, No. L-01-1196, 2002 WL 31420758 (Ohio Ct. App. 6th Dist. Oct. 25, 2002); *State v. Seese*, Nos. 01-CA-007852, 01-CA-007889, 2002 WL 701933 (Ohio Ct. App. 9th Dist. Apr. 24, 2002); *State v. McCoy*, Nos. C-000659, C-000660, 2001 WL 1386196 (Ohio Ct. App. 1st Dist. Nov. 9, 2001); *State v. Neal*, No. 2001-CA-00067, 2001 WL 1771034 (Ohio Ct App. 5th Dist. Aug. 13, 2001); *State v. Gaddis*, No. 78764, 2001 WL 898425 (Ohio Ct. App. 8th Dist. Aug. 2, 2001).

Washington "contend[ed] that there was no *Apprendi* violation because the relevant 'statutory maximum' [was] not 53 months, [i.e., the top of the 'standard range,'] but the 10-year maximum" which, by statute, "no exceptional sentence [could] exceed . . . ." *Id.* at 303. The Court rejected that argument as "clear[ly]" foreclosed by its precedents, which specified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Ibid.* (citing *Ring v. Arizona*, 536 U.S. 584, 602 (2002); *Harris v. United States*, 536 U.S. 545, 563 (2002); *Apprendi*, 530 U.S. at 488).

Just over two weeks later, Baker filed his appellate brief in the Second District. Because we must assess the adequacy of Baker's counsel's performance based on "counsel's perspective at the time," *Strickland*, 466 U.S. at 689, rather than "in the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685, 702 (2002), subsequent legal developments are relevant only if those developments were "*clearly* foreshadowed by existing decisions," *Thompson*, 598 F.3d at 288 (quoting *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999)) (emphasis added). Outside of this narrow exception, "counsel is not ineffective for failing to predict the development of the law." *Ibid.* (collecting cases); *see also Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) (stating that "nonegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel").

In this case, while the Ohio Supreme Court eventually found in *Foster* that the state's sentencing statute violated *Blakely*, this outcome was far from "clearly foreshadowed."[5] We may

---

[5] *Foster* was decided in February 2006, about four months after Baker's conviction became final.

presume that Baker's appellate counsel was aware of the wealth of Ohio appellate-court precedent discussed above – including multiple cases in the Second District – unanimously holding that Ohio's sentencing scheme passed muster under *Apprendi*. Further, we conclude that a competent counsel aware of those precedents could have read the newly released *Blakely* decision and concluded that it did nothing to undermine the Ohio courts' pre-*Blakely* precedent. The *Blakely* Court, after all, stated that it was merely "apply[ing] the rule [the Court had already] expressed in *Apprendi*." *Blakely*, 542 U.S. at 301; *see also id.* at 303 (stating that "*[o]ur precedents make clear*" the proper definition of the term "statutory maximum" (emphasis added)). In fact, Baker effectively concedes as much when he acknowledges that "even if *Apprendi* constituted a new rule of law, *Blakely* did not." Appellant's Br. at 14-15. Thus, there was very little (if anything) in the *Blakely* decision itself to suggest that a Sixth Amendment challenge to Ohio's felony-sentencing statute would be any less futile after that decision was handed down than it would have been before. Under such circumstances, we cannot say that the failure to argue *Blakely* was an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Furthermore, while subsequent decisions do not *directly* bear on the reasonableness of counsel's conduct at the relevant time, our conclusion that counsel's failure to raise a *Blakely* claim was not constitutionally unreasonable is bolstered by the fact that Ohio's appellate courts unanimously continued to reject Sixth Amendment challenges to Ohio's felony-sentencing statute

after *Blakely*.[6]  Although the First Appellate District did reverse course in February 2005, *see State v. Bruce*, 824 N.E.2d 609, 611 (Ohio Ct. App. 1st Dist. 2005) (finding a *Blakely* violation and concluding its earlier decision to the contrary was "wrong"), no other district followed suit until the Ohio Supreme Court decided *Foster* a year later.  The Ohio Sentencing Commission, meanwhile, opined that *Blakely* "did not materially affect the Ohio sentencing scheme."  *Ibid.* (citing Diroll & Anderson, *Judicial Decision Making After Blakely*, Ohio Criminal Sentencing Commission (Oct. 5, 2004)).  That the entire Ohio appellate bench (at least through February 2005) and the state sentencing commission failed to see the merit in a *Blakely* challenge to the Ohio felony-sentencing statute makes it impossible to conclude that *Foster* was "clearly foreshadowed" at the time of Baker's appeal in July 2004.

All in all, our general description of the scenario faced by trial counsel in *Benning* is just as applicable here:

> The law was rapidly changing . . . and the impact of *Blakely* [on Ohio's sentencing statute] was far from certain.  Although prudent counsel would have [raised] a

---

6 *See, e.g.*, *State v. Weese*, No. H-05-003, 2005 WL 1845256 (Ohio Ct. App. 6th Dist. Aug. 5, 2005); *State v. Sanchez*, No. 04AP-1320, 2005 WL 1745315 (Ohio Ct. App. 10th Dist. July 26, 2005); *State v. Cooper*, No. 84645, 2005 WL 1541000 (Ohio Ct. App. 8th Dist. June 30, 2005); *State v. Reen*, No.2003-A-0077, 2005 WL 1009826 (Ohio Ct. App. 11th Dist. Apr. 29, 2005); *State v. Goins*, No. 02 CA 68, 2005 WL 704865 (Ohio Ct. App. 7th Dist. Mar. 21, 2005); *State v. Trubee*, No. 9-03-65, 2005 WL 335833 (Ohio Ct. App. 3d Dist. Feb. 14, 2005); *State v. Rowles*, No. 22007, 2005 WL 19440 (Ohio Ct. App. 9th Dist. Jan. 5, 2005); *State v. Berry*, 824 N.E.2d 543, 551 (Ohio Ct. App. 12th Dist. 2004); *State v. Wheeler*, No. 04-CA-1, 2004 WL 2827714 (Ohio Ct. App. 4th Dist. Nov. 26, 2004); *State v. Iddings*, No.2004-CA-A06043, 2004 WL 3563921 (Ohio Ct. App. 5th Dist. Nov. 8, 2004); *State v. Bell*, No. C-030726, 2004 WL 1531904 (Ohio Ct. App. 1st Dist. July 9, 2004); *see also State v. Martin*, No. 20516, 2005 WL 2107858 (Ohio Ct. App. 2d Dist. Sept. 2, 2005) (holding that *Blakely* challenge failed under plain-error standard); *State v. Bernhard*, No. 2004-CA-66, 2005 WL 567313 (Ohio Ct. App. 2d Dist. Mar. 11, 2005) (same).

> *Blakely* claim under these circumstances, counsel's failure to anticipate that *Foster* would [hold that Ohio's sentencing statute violated *Blakely*] was not constitutionally unreasonable. *See Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999). As in *Lucas*, Ohio courts "continued to grapple with the problem," and thus resolution of the issue was "not clearly foreshadowed" at the time of [the appeal]. Therefore, this is not "one of those 'rare cases' for finding ineffective assistance because [counsel] failed to anticipate a development in the law."

345 F. App'x at 157 (some internal citations omitted); *accord Henley*, 2010 WL 2181804, at *3 ("[A]s of the date of Henley's sentencing, Ohio sentencing law was in a state of flux and his trial counsel's failure to anticipate the application of *Blakely* in *Foster* [therefore] did not constitute ineffective assistance of counsel.").

This conclusion is all the more appropriate given the relative strength of the issues that Baker's counsel *did* raise on appeal. *See Thompson*, 598 F.3d at 285 (stating that appellate counsel is ineffective only if a *Blakely* claim would have been "clearly stronger than [the] issues that counsel did present"). Although Baker's conviction and sentence were affirmed on appeal, the Second District found at least some merit in Baker's ineffective-assistance-of-trial-counsel claims, noting that "evidence presented at trial could have supported an instruction for [the lesser included offense of] aggravated assault" had counsel requested one, and that counsel had called a witness whose testimony "was not helpful to the defense." *Cf. id.* at 280 (holding failure to raise *Blakely* claim was not ineffective performance where appellate counsel "raised several plausible arguments" and did not merely assert a "perennial loser" such as a sufficiency-of-the-evidence claim (quoting *Benning*, 345 F. App'x at 158)).

## 2. *Prejudice*

Even if Baker could show that his appellate counsel performed deficiently by failing to raise a *Blakely* claim, he could not prevail without also showing that counsel's deficient performance prejudiced him. In this context, a showing of prejudice would require demonstrating "a reasonable probability that inclusion of the [*Blakely*] issue would have changed the result of the appeal." *Benning*, 345 F. App'x at 158 (quoting *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008)) (alteration in original). This requires only "a reasonable probability that the appeal would have resulted in a remand," and does not necessarily require that "the remand would have resulted in a shorter sentence." *Ibid.*; *see also Carter v. Timmerman-Cooper*, Nos. 08-3535, 08-3536, 2010 WL 2089536, at *3 (6th Cir. May 25, 2010) (holding failure to assert *Blakely* claim in analogous context did not result in prejudice because "under Ohio law at the time it is unlikely the Fifth District would have remanded [petitioner's] case").[7]

Under this standard, it is clear that Baker was not prejudiced by appellate counsel's failure to raise a *Blakely* claim. Baker's appeal was decided in January 2005; before the Ohio Supreme Court decided *Foster* in February 2006, the Second District consistently refused to consider any *Blakely* arguments that had not been raised at the time of sentencing, finding such arguments unpreserved. *See, e.g.*, *State v. Kerby*, 833 N.E.2d 757, 773 (Ohio Ct. App. 2d Dist. 2005); *State v.*

---

[7] In this respect, the prejudice component of Baker's ineffective-appellate-assistance claim differs from the harmless-error component of his underlying *Blakely* claim. If we were to reach the latter inquiry, the controlling question would be whether Baker would actually have *received a lesser sentence* absent the *Blakely* violation. *See Villagarcia v. Warden, Noble Corr. Inst.*, 599 F.3d 529, 536-38 (6th Cir. 2010).

*Bolling*, No. 20225, 2005 WL 1208103, at *11 (Ohio Ct. App. 2d Dist. May 20, 2005). Accordingly, had Baker's appellate counsel raised a *Blakely* claim for the first time on appeal in July 2004, the Second District would have considered it waived, and Baker would not have received a remand.

Further, the Second District would not have been swayed by the fact that *Blakely* had not yet been decided at the time of Baker's sentencing. During the pre-*Foster* period, the Second District refused to consider "*Blakely*" claims raised for the first time on appeal even by defendants sentenced prior to *Blakely*; the Second District reasoned that such claims were merely *Apprendi* claims, and that there was consequently no excuse for not having raised them earlier:

> The fact that *Blakely* was not decided until after Defendant's sentencing hearing took place is not significant because the issues reviewed in *Blakely* were previously reviewed many times by the United States Supreme Court and other federal and state courts. . . . The issue Defendant is now attempting to raise on appeal under *Blakely* is essentially the same constitutional argument raised in *Apprendi*. This Sixth Amendment contention clearly could have been raised by Defendant in the trial court below. . . . We will not address this constitutional challenge to Ohio's felony sentencing scheme which is being raised for the first time on appeal.

*Bolling*, 2005 WL 1208103, at *11 (internal citations omitted); *accord State v. DeLong*, No. 20656, 2005 WL 937738, at *1-2 (Ohio Ct. App. 2d Dist. Apr. 15, 2005); *State v. Watkins*, No. 04-CA-12, 2005 WL 678993, at *3 (Ohio Ct. App. 2d Dist. Mar. 25, 2005).[8]

In sum, Baker is simply incorrect when he asserts that he "would have been accorded a new sentencing hearing" if his appellate counsel had made a *Blakely* argument to the Second District in July 2004. Appellant's Br. at 6.

---

[8] Baker does not now argue that appellate counsel was ineffective for failing to argue that *trial counsel was ineffective* for failure to raise an *Apprendi* challenge *at sentencing*.

## B. Substantive *Blakely* Claim

In addition to arguing that appellate counsel was ineffective for failing to raise a *Blakely* claim, Baker also argues on the merits that his sentence violates the Sixth Amendment. Respondent maintains that Baker's substantive *Blakely* claim is procedurally defaulted.

"In this circuit, to determine whether a federal claim has been procedurally defaulted, we apply a three-prong test . . . ." *Eley v. Bagley*, 604 F.3d 958, 964-65 (6th Cir. 2010). First, "the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Ibid.* (quoting *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001)). Second, "the court must decide whether the state courts actually enforced the state procedural sanction." *Ibid.* (quoting *Jacobs*, 265 F.3d at 417). Finally, "the court must decide whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Ibid.* (quoting *Jacobs*, 265 F.3d at 417).

Each of these three conditions is satisfied here. Ohio's procedural rule of *res judicata* provides that all claims must be raised on direct appeal, and may not be saved for collateral review, unless "facts necessary to develop a claim were [not] available on direct appeal . . . ." *Abshear v. Moore*, 354 F. App'x 964, 967 (6th Cir. 2009) (citing cases); *see also Eley*, 604 F.3d at 965. Baker failed to comply with this rule. His initial appeal did not invoke *Blakely* at all, and his Rule 26(B) application to reopen alleged only ineffective assistance of appellate counsel premised on failure to argue *Blakely*, rather than a substantive *Blakely* claim. *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (holding that "a Rule 26(B) application based on ineffective assistance cannot function

to [save] the underlying substantive claim" from procedural default (internal quotation marks omitted)); *Abshear*, 354 F. App'x at 968 (holding that Rule 26(B) application arguing ineffective appellate assistance for failure to make *Blakely* argument did not raise underlying *Blakely* claim for purposes of procedural-default analysis). Moreover, we have repeatedly held that "Ohio's application of res judicata . . . is an actually enforced, adequate and independent state ground upon which the Ohio state courts consistently refuse to review the merits of a defendant's claims." *Eley*, 604 F.3d at 965 (quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 633 (6th Cir. 2008)).

Even though the conditions for procedural default are met, "we may still excuse the default if the petitioner can demonstrate 'that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.'" *Ibid.* (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).[9] As cause for his default, Baker asserts both (1) that appellate counsel provided ineffective assistance and (2) that a *Blakely* claim was "so novel that its legal basis [was] not reasonably available to counsel . . . ." Reply Br. at 5.

Either of these could, in theory, constitute "cause" for a procedural default. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("Ineffective assistance of counsel . . . is cause for a procedural default."); *Reed v. Ross*, 468 U.S. 1, 16 (1984) ("[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for [procedural default]."). However, it is inconceivable that *both* could be true in a single case – after all, if a claim is well-

---

[9] Even without a showing of cause, a court may overlook procedural default "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Baker does not argue that this is one of those extraordinary cases.

enough established that counsel is constitutionally deficient not to raise it, it is *ipso facto* not "so novel that its legal basis is not reasonably available."

Further, in Baker's case, *neither* is true. *See Pitts v. Cook*, 923 F.2d 1568, 1571-72 (11th Cir. 1991) (stating that a claim may simultaneously be "not so novel as to excuse procedural default, [and] not so established that failure to [assert it] constituted ineffective assistance of counsel"). As discussed above, the eventual invalidation of Ohio's felony-sentencing scheme under *Blakely* was not so "clearly foreshadowed by existing decisions" that counsel's failure to mount a *Blakely* challenge was constitutionally unreasonable. *Thompson*, 598 F.3d at 288. At the same time, *Blakely* and *Apprendi* were both on the books at the time of Baker's direct appeal, such that Baker did not "lack[] the tools to *construct* [his] constitutional claim," *Engle v. Isaac*, 456 U.S. 107, 132 (1982) (emphasis added), even if it was doubtful that he would *prevail* on it. *See also Poyner v. Murray*, 964 F.2d 1404, 1424 (4th Cir. 1992) (stating that a claim may be "sufficiently novel" to justify procedural default only if the "case law . . . necessary *to conceive and argue* the claim" was not yet in existence at the time of default (emphasis added)). Baker's acknowledgment that there was a "wave of *Blakely*-related appellate activity in Ohio during the pendency of [his] appeal" confirms that such a claim was not sufficiently novel to excuse his procedural default. Reply Br. at 3; *see Wheeler v. United States*, 329 F. App'x 632, 636 (6th Cir. 2009) (stating that "where other defense counsel have raised the claim, the issue can hardly be novel").

Baker, therefore, cannot show the cause necessary to excuse his procedural default. As a result, he is not entitled to habeas relief on his substantive *Blakely* claim.

**CONCLUSION**

For the reasons described above, the district court's denial of the writ is **AFFIRMED.**